UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:12-CR-87-HAB |
| | ) | |
| CRAIG WHIGUM | ) | |

## OPINION AND ORDER

Craig Whigum ("the Defendant") filed two motions and a letter seeking a reduction in his sentence on various grounds (ECF Nos. 208, 209, 216).[1] The Government filed its response to these requests on June 1, 2020. (ECF No. 218). For the following reasons, all the Defendant's Motions will be DENIED.

## PROCEDURAL BACKGROUND

On May 8, 2013, the Defendant pled guilty to a Hobbs Act Robbery in violation of 18 U.S.C. § 1951 and use of a firearm during and in relation to that crime of violence in violation of 18 U.S.C. § 924(c). (ECF Nos. 45, 50, 52, 57). The charges stemmed from his involvement with his codefendants in an armed robbery of a licensed firearms dealer, Shooter's Guns located in New Haven, Indiana. In that robbery, the Defendant was one of the two individuals who entered the store, stole the owner's wallet and firearm, battered the owner, threatened him and ultimately fled the store with 20 handguns and 3 long guns. (Presentence Investigation Report

---

[1] To the extent the Defendant was seeking a reduction pursuant to the First Step Act ("FSA") and pursuant to this Court's General Order 2020-11, the Court referred the letter to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to his motion. (ECF No. 211). On April 24, 2020, the FCD appeared on Defendant's behalf (ECF No. 212), and shortly thereafter, moved to withdraw. (ECF No. 213). The Court then granted the FCD's request to withdraw and ordered the Government to respond to Defendant's *pro* se motions. (ECF No. 217).

("PSR") ¶¶s 7, 8, 10, 12, ECF No. 166). The robbers fled the scene in a Chevy Impala and when spotted, led police on a high-speed chase, the vehicle struck an occupied truck, slid into a concrete wall and came to a rest. (PSR ¶ 10.) A firearm was discharged in the store during the execution of the robbery which subjected the Defendant to a ten-year mandatory minimum. (ECF Nos. 1, 2, 26, 27). On March 24, 2015, the Defendant was sentenced to 33 months on the robbery and 120 months on the gun count which ran consecutive to the robbery, and he was ordered to repay restitution in the amount of $23,672.14. (DE 169, 170). The Defendant is currently incarcerated at Yazoo City, Mississippi Low FCI. [2]

## DISCUSSION

The Defendant's Motions request a sentencing modification. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which permits the court to reduce a sentence based on a retroactively applicable amendment to the sentencing guidelines that lowers the defendant's guideline range. 18 U.S.C. § 3582(c)(2). Another allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A).

The Defendant's first motion requested a reduction based upon the holding in *United States v. Eason*, 953 F.3d 1184 (11th Cir. 2020). In that case, the 11th Circuit concluded that a Hobbs Act robbery does not qualify as a "crime of violence" for purposes of the career offender enhancement. There are several problems with the Defendant's motion, not the least of which are that he was never designated a career offender, and he was convicted and sentenced in the Seventh Circuit (where the law is arguably different) and not the Eleventh Circuit. *See United States v. Tyler,* 780 Fed.Appx. 360, 363 (7th Cir. 2019) (noting in dicta "we have not directly addressed whether Hobbs

---

[2] The Government's brief indicates that the Defendant is housed at Yazoo City, Medium FCI. However, the Defendant's correspondence shows him residing at Yazoo City, Low FCI.

Act robbery is a crime of violence under the guidelines…we have held that it qualifies as a 'crime of violence' under the elements clause of § 924(c) … And we have typically interpreted 'crime of violence' the same way under the guidelines and § 924(c)"). More importantly, however, even if he were designated a career offender, this Court lacks the statutory authority to modify his sentence under § 3582(c)(2) since there is no "retroactively applicable amendment to the sentencing guidelines" that lowers his guideline range. Thus, he cannot prevail on his first motion, ECF No. 208, and that Motion is DENIED.

Next, Defendant seeks compassionate release pursuant to § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motions, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further. As of its response deadline (June 1, 2020), the Government acknowledged that while the Defendant filed a request for compassionate release with the Warden

on May 20, 2020, 30 days have not passed since that request[3] and thus, his motions were premature. "Two questions are presented by this issue, namely whether the exhaustion requirement is jurisdictional and whether, if not jurisdictional, the exhaustion requirement is waivable over the government's objection." *United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020).

This Court has previously held that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, *see United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 2079293, at *1 (N.D. Ind. Apr. 30, 2020), relying on the Seventh Circuit's decision in *United States v. Taylor*, 778 F.3d 667, 670 (7th Cir. 2015); *see also*, *Council*, 2020 WL 3097461 at *4 ("Following the reasoning in *Taylor*, the Court finds that Congress did not "clearly state" that the exhaustion requirement is jurisdictional in § 3582(c)(1)(A); *United States v. Santiago*, No. 2:16-CR-174-JVB-JEM, 2020 WL 3396899, at *2 (N.D. Ind. June 19, 2020) ("Because Congress did not mark the exhaustion requirement as jurisdictional, the Court finds that it is non-jurisdictional."); *United States v. Cox*, No. 4:18-cr-17-TWP-VTW-1, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020). Thus, the Defendant's motions are properly adjudicated in this Court regardless of whether he has or has not completed the statutory exhaustion process.[4]

Turning next to the issue of waiver, the Government urges that the Defendant's failure to properly exhaust under § 3582(c)(1)(A) ends the analysis. Whether this is true, however, is an ongoing debate throughout the country. Some courts have concluded that the exhaustion

---

[3] As of the date of this Opinion and Order, more than 30 days have elapsed since the Defendant's submission to the Warden.

[4] The Court is aware that the Government resists the argument that § 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional and has, in other compassionate release cases in this division, reserved its right to contest this issue. *See United States v. Shellman,* 1:17-cv-17, ECF No. 265 at fn. 4.

requirement is a mandatory one not subject to waiver or other equitable consideration; others make the case that rigid adherence to the exhaustion requirement precludes a district court from exercising judicial discretion to take into account exigent circumstances. *See United States v. Russell,* No. 1:14-CR-6-HAB, 2020 WL 2989160, at *3 (N.D. Ind. June 4, 2020) ("District courts across the country are struggling daily with whether strict compliance with the exhaustion provision is necessary, especially in light of the serious risks associated with COVID-19.") (listing cases). Because of the lack of clear precedent, this Court has twice "put to the side the thorny issue of exhaustion to tackle the easier issue" of whether the defendant in this case has presented extraordinary and compelling reasons to warrant a sentence reduction. *United States v. Wolfe*, 1:15-cr-169, 2020 WL 2615010, at *2 (S.D. Ind. May 22, 2020); *Council*, 2020 WL 3097461, at *5. This case is no different.

The Defendant asserts that he fears contracting COVID-19 (ECF No. 216: "I fear for my life."). Additionally, he points to a host of programs he has completed while incarcerated to justify his release and demonstrate his rehabilitation, states that he has had impeccable prison conduct, and believes he has served a significant portion of his sentence to adequately punish him. (ECF Nos. 209, 216). He further indicates that he desires "a fresh start so I can work towards having a wife and children." (ECF No. 216 at 3). As summarized by the Court here, this is the entire basis for his request.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and

the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

In this case, the Defendant's filings give this Court very few reasons, let alone extraordinary or compelling ones, to justify granting his motions. The Defendant has not articulated any medical condition that makes him more susceptible to the virus nor has he provided any basis for the Court to conclude that he suffers from a serious condition that increases the likelihood of severe consequences from COVID-19. The Defendant, who is 27, is not in an at-risk age group and he has not identified any family circumstances that would aid his cause.[5]

As for his confinement, as of June 24, 2020, Yazoo City, Mississippi Low FCI has 1 COVID-19 positive inmate, 100 recovered inmates and 8 recovered staff.  There have been two inmate deaths.[6]  "The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *See Melgarejo*, 2020 WL 2395982, at *3. Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id.* at 5–6. *See also United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

Aside from his generalized fear of contracting COVID-19, the Defendant has not set forth any basis for this Court to conclude that the institution is unable to successfully contain the outbreaks there. The Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See*  Federal

---

[5] The Court does acknowledge and appreciate that the Defendant has completed a number of programs and vocational training while incarcerated.

[6] https://www.bop.gov/coronavirus/

Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 11, 2020); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp. The relatively low infection rate and the rate of recovery at this institution is a testament to the BOP's mitigation and safety efforts.

Finally, with respect to the §3553(a) factors, the Court observes that the Defendant has served just over half of his 153-month sentence. This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. Indeed, the nature and circumstances of the offense demonstrate that during the course of the robbery, the Defendant battered the owner of the firearms store and discharged a firearm inside before fleeing the store with a small arsenal of firearms. If that were not enough, he led police on a high-speed chase striking an occupied truck before coming to rest aside a concrete wall. (PSR ¶¶s 7, 8, 10, 12). The Court finds that the significant sentence reduction that Defendant seeks would greatly undermine the above statutory purposes of sentencing.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motions are DENIED.

## CONCLUSION

Based on the foregoing, the Defendant's Motions (ECF No. 208, 209, 216) are DENIED. So ordered on June 29, 2020.

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT